IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RAY CHARLES MCCLOUD, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 2:09-CV-569-WKW [WO] |
| ) | |
| RONNIE BENEFIELD, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' partial motion to dismiss (Doc. # 76) Counts I, II, III, V, and VI of Plaintiffs' Second Amended Complaint (Doc. # 73) for failure to state claims upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The motion is fully briefed and ripe for resolution. (Docs. # 79-2, 81.) Upon consideration, it is due to be granted.

**I. FACTS**

As alleged in the Second Amended Complaint, the facts are as follows.[1] Plaintiffs Ray Charles McCloud and Leon Jernigan, Jr., were assaulted by the Chief Deputy Sheriff and deputy sheriffs of Barbour County, Alabama (collectively, "Defendants").[2]  (Doc # 73, ¶ 1.)

---

[1] The court emphasizes that the allegations are stated as fact only for purposes of reviewing the Complaint, "and should not be construed as findings of fact" by the court. *Corbitt v. Home Depot U.S.A., Inc.*, 589 F.3d 1136, 1143 n.2 (11th Cir. 2009). In reviewing a complaint on a motion to dismiss, it is axiomatic that the court must accept all the allegations it contains as true. *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008).

[2] Originally, the Town of Clayton, Alabama, was also a Defendant, and the Town remains in the caption of the current Complaint. The Town, along with Deputy Hameric, has filed an answer rather than a motion to dismiss. (Doc. # 75.) Since no counts in the Complaint are asserted against the Town, however, the court concludes that Plaintiffs have voluntarily dismissed it as a Defendant.

A minor, "PCB," is the 17-year-old grandson of Chief Deputy Ronnie Benefield, and the son of Tara Benefield. The assault was motivated by Mr. McCloud's involvement in an interracial romance with Tera Benefield, the daughter of Chief Deputy Ronnie Benefield, "and/or a disapproval" of Mr. McCloud based on his "substantial criminal history." (Doc. # 73, ¶ 1.) Mr. Jernigan was attacked because he was with Mr. McCloud when one of the events in question took place. (Doc. # 73, ¶ 1.) Both Plaintiffs are black, while Chief Deputy Benefield is white. (Doc. # 73, ¶¶ 3-5.)

The first relevant incident occurred on April 15, 2009, when Defendant Eugene Hameric, II, a Barbour County deputy sheriff, stopped and held Mr. McCloud for approximately two hours without probable cause or other justification. (Doc. # 73, ¶¶ 15-17.) A more serious incident occurred in the early morning hours of June 1, 2009, when both Plaintiffs and Ms. Benefield were driving together. (Doc. # 73, ¶ 19.) Defendant PCB warned Ms. Benefield not to bring Mr. McCloud to Ms. Benefield's residence, and when she did so anyway, he made a false report of domestic violence to Chief Deputy Benefield. (Doc. # 73, ¶ 20.) This resulted in Chief Deputy Ronnie Benefield, Deputy Jason Benefield, and Deputy Paul Motzenbecker all arriving at Ms. Benefield's residence. (Doc. # 73, ¶ 21.) Mr. Jernigan "was outside and saw defendants drive up and went into the front room of the trailer"; he was then "tased with a taser" by Deputy Motzenbecker, without justification. Mr.

Jernigan fled through a field, injuring himself on barbed wire and eventually passing out. (Doc. # 73, ¶ ¶ 22-24[3].)

Meanwhile, Defendants entered Ms. Benefield's bedroom, where Mr. McCloud was present; Chief Deputy Benefield handcuffed, beat, and choked Mr. McCloud. Chief Deputy Benefield also drew his service weapon on Mr. McCloud, and instructed Defendant PCB to beat Mr. McCloud. These assaults painfully injured Mr. McCloud. (Doc. # 73, ¶¶ 25, 26, 28.) Defendants "left the scene," and Plaintiffs, accompanied by Ms. Benefield, attempted to go to the hospital for treatment, but decided to turn back when they saw Defendants also headed toward the hospital. (Doc. # 73, ¶¶ 30-31.) Ms. Benefield's own car, a Cadillac, was driven to the hospital by a friend of Mr. Jernigan's. Defendants saw the Cadillac, assumed Mr. McCloud was driving it, and gave chase, resulting in the impoundment of the car. (Doc. # 73, ¶¶ 31-34.) No criminal charges were brought as a result of the night's activities. (Doc. # 73, ¶ 35.)

Count I of the Complaint claims that Plaintiffs' rights under the Fourth and Fourteenth Amendments were violated when Defendants subjected them to an unreasonable seizure and excessive force. (Doc. # 73, ¶¶ 38-38.)[4] Count II of the Complaint asserts a violation of Plaintiffs' Fourth and Fifteenth [sic] Amendment rights, based on "deliberate indifference."

---

[3] The Complaint contains two paragraph 22s and no paragraph 23; for convenience the court will consider the second paragraph 22 to be paragraph 23.

[4] The Complaint has two paragraph 38s, then continues with a paragraph 39. To avoid renumbering all subsequent paragraphs, the court will not refer to the second paragraph 38 as paragraph 39.

(Doc. # 73, ¶¶ 39-40.)  Count III asserts a violation of Fourteenth Amendment substantive due process rights by Mr. Jernigan against Deputy Motzenbecker.  (Doc. # 73, ¶¶ 41-42.)  Count IV asserts a claim under the Fourth and Fourteenth Amendments for unreasonable seizure, by Mr. McCloud against Deputy Hameric, for the events that took place on April 15, 2009. (Doc. # 73, ¶¶ 43-44.)  Count V alleges assault and battery under Alabama law by Mr. McCloud against Chief Deputy Ronnie Benefield and PCB.  (Doc. # 73, ¶¶ 45-46.)  Count VI alleges assault and battery under Alabama law by Mr. Jernigan against Deputy Motzenbecker.  (Doc. # 73, ¶¶ 47-48.)  Finally, Count VII alleges Alabama law false imprisonment by Mr. McCloud against Deputy Hameric for the April 15, 2009 incident.  (Doc. # 73, ¶¶ 49-50.)

The Second Amended Complaint seeks only money damages against all Defendants, and not injunctive relief.  (Doc. # 73, at 1.)  All Defendants are sued in their individual capacities.  (Doc. # 73, at 2-3.)  The partial motion to dismiss is brought only by Defendants Ronnie Benefield, Jason Benefield, and Paul Motzenbecker, and seeks the dismissal only of Counts II, III, V, and VI.  (Doc. # 76.)

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must "take the facts alleged in the complaint as true and construe them in the light most favorable to" the plaintiff.  *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008).  "[D]etailed factual allegations" are not required, but something "more than labels and conclusions, and a

4

formulaic recitation of the elements of a cause of action" is necessary. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

As an initial matter, the court notes that Defendants briefly invoke the defense of qualified immunity, even though it is of no relevance to the bases for their motion to dismiss, and Defendants do not explain how it specifically applies to any of the counts they wish to have dismissed. Accordingly, the court will not discuss qualified immunity, except to note that it is normally an issue resolved at the summary judgment, rather than motion to dismiss, stage of a case. *See St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

#### A. *State Law Immunity*

Defendants first argue that Counts V and VI should be dismissed because they are entitled to absolute immunity from those state-law claims. (Doc. # 76.) It is abundantly clear that Alabama sheriffs and their deputies enjoy absolute immunity from state-law claims for money damages based on actions taken within the scope of their employment, and such immunity is not limited only to claims of negligence. *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1431 (11th Cir. 1998); *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996); *see* Ala. Const. art I, § 14. While the Alabama Supreme Court recently held that such immunity

is not available to jailers employed by a sheriff's office, that decision only underscores that absolute immunity does protect sheriffs and their deputies serving in non-jailer capacities. *Ex parte Shelley*, No. 1080588, 2009 WL 2997498, at *6 (Ala. Sept. 18, 2009); *see LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009).

As Defendants note, the cases cited by Plaintiffs largely concern a different type of state-law immunity, do not involve sheriffs or their deputies, or both.[5] So long as a sheriff or deputy sheriff acts within the scope of his employment, he is immune even if he acts willfully or maliciously; those exclusions, cited by Plaintiffs, apply to state-agent immunity, not the absolute immunity provided to Alabama constitutional officers. *See ex parte Davis*, 930 So. 2d 497, 501 (Ala. 2005) (dismissing an assault and battery claim against a deputy sheriff on the basis of absolute immunity, and discussing the limited circumstances in which a suit may be maintained against sheriffs and deputy sheriffs). Further, *any* job-related claim against a sheriff or his deputy for money damages is barred; the only permissible claims against sheriffs related to their official actions are for certain types of injunctive relief. *Id*.

The most serious argument made by Plaintiffs against the dismissal of these two counts is that Defendants were not acting within the scope of their employment during the events in question. As an initial matter, the court agrees with Defendants that it at least appears self-contradictory to assert that Defendants were acting under color of law for

---

[5] Plaintiffs' brief is confusing, asserting on one page that "the lack of absolute immunity for sheriffs is long established," and on the next that "plaintiffs do not dispute . . . that a sheriff and his deputies enjoy absolute immunity" within the scope of their employment. (Doc. # 79-2, at 9-10.)

6

purposes of the Section 1983 counts, but not within the scope of their duties for purposes of the state-law counts. Nonetheless, the court recognizes that the concepts originate in different bodies of law and may not entirely overlap.[6] The immunity granted to Alabama sheriffs is strong, but Defendants cannot contend that it permits sheriffs or deputies to engage in intentionally tortious behavior for entirely personal reasons simply because they are wearing their uniforms or driving marked cars.

Neither party has cited, and the court has not discovered, a bright-line test used by Alabama courts in determining whether a particular action is "within the line and scope" of a state employee's duties. Case law indicates that the Alabama Supreme Court looks to a state employee's "job description" in making such determinations. *See, e.g.*, *Ex parte Wilson*, No. 1080368, 2009 WL 3517607, at *9 (Ala. Oct. 30, 2009). A sheriff's "job description" is statutory, and it includes the investigation of crime and apprehension of criminals. Ala. Code § 36-22-3(4).

One Alabama case looked to whether a deputy sheriff's actions "were undertaken for some personal motive to further some personal interest" in determining whether he was entitled to absolute immunity. *Davis*, 930 So. 2d at 501. Given the unique circumstances of this case, the court perceives that it is one where the alleged actions of some Defendants, particularly Chief Deputy Benefield, come close to that line. But the complaint does not

---

[6] A defendant acts "under color of state law when he acts with authority possessed by virtue of his employment with the state." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303-04 (11th Cir. 2001). The phrase is construed relatively broadly, and may include intentional torts. *See, e.g., id.* (holding that a forcible rape by a city manager occurred under color of state law).

allege that any of the Defendants (aside from PCB, who is not a party to this motion) knew that the domestic violence call was false and came to Ms. Benefield's residence only as a pretext to assault Plaintiffs. All the actions complained of, whether ultimately legitimate or not, occurred while Defendants were engaged fundamentally in the duties prescribed for sheriffs in the Alabama Code. They were called to the scene as the result of a domestic violence complaint, and all the subsequent events complained of occurred as the result of that call. The court concludes that Plaintiffs have failed to show that Defendants were not acting within the line and scope of their employment. Accordingly, Defendants are entitled to absolute immunity for the actions in question, and the motion to dismiss the state-law claims in Counts V and VI with respect to Chief Deputy Ronnie Benefield, Deputy Jason Benefield, and Deputy Paul Motzenberger is due to be granted.

### B. Failure to State a Constitutional Basis for Counts I, II, and III

Defendants next argue that Counts I, II, and III should be dismissed because the Complaint does not identify "the specific constitutional right allegedly violated." (Doc. # 76, at 6.) Plaintiffs concede that Count II should be dismissed, because it mistakenly listed the "Fifteenth Amendment," rather than the Fourteenth, as its basis.[7] (Doc. # 79-2, at 11.)

Count I, brought by Mr. McCloud, identifies its bases as both the Fourth and Fourteenth Amendments, while Count III, brought by Mr. Jernigan, is based on the Fourteenth Amendment alone. Defendants' argument, which is made at considerably greater

---

[7] The voluntary dismissal of Count II moots the need to discuss the third section of Defendants' motion to dismiss, which contained additional objection to Count II. (Doc. # 76 at 6-7.)

8

length in their reply than in their opening brief, is that these counts should be dismissed to the extent they rely on the Fourteenth Amendment. (Doc. # 81.) The argument is that these are "excessive force" claims, and that when such claims stem from "an arrest or investigatory stop of a free citizen," they are to be evaluated under the rubric of the Fourth Amendment, rather than the Fourteenth. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009).

As to Count I, the court does not believe that there is any real issue between the parties. This Count likely refers to both the Fourth and Fourteenth Amendments because the Fourth Amendment applies to states and state officers only through the Fourteenth Amendment under the doctrine of incorporation; thus, any invocation of a right found in the first ten amendments against a state technically rests on both the substantive amendment and the Fourteenth Amendment. *See Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1295, n.53 (11th Cir. 2007) (noting that a plaintiff was not "present[ing] a distinct Fourteenth Amendment claim for relief" when he "invoked the Fourteenth Amendment as a basis for his claims simply because it is through the Fourteenth Amendment" that other amendments apply to the states). Count I uses Fourth Amendment terminology such as "unreasonable seizure," and Plaintiffs in their response do not defend the assertion of a separate Fourteenth Amendment due process claim in this Count. Therefore, the motion to dismiss an independent Fourteenth Amendment claim with respect to Count I will be granted, although the court is unsure that such a claim was made in the first instance.

Count III, by contrast, is specifically based on the Fourteenth Amendment right to substantive due process, and does not invoke any other "substantive" amendment. Specifically, the basis for Count III is that Mr. Jernigan was deprived of his protected liberty interest when Deputy Motzenbecker tased him without due process of law. Defendants argue that, although Mr. Jernigan alleges he was "tased" almost immediately upon Defendants' arrival on the scene, and was never formally detained, the incident was nonetheless a "seizure" for Fourth Amendment purposes. While the specific issue of whether using a Taser on a suspect constitutes a seizure appears to be a somewhat novel one,[8] existing case law provides considerable guidance. The Supreme Court has held that a seizure "occurs . . . when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (emphasis in the original). As Defendants note, in *Brower*, the "seizure" occurred when a suspect was killed by a tractor-trailer intentionally placed by the police to stop a suspect's flight; he was never arrested or formally detained. *Id.* at 594. The Eleventh Circuit has described Tasers as being "used to subdue persons," *Chaney v. City of Orlando*, 483 F.3d 1221, 1223 n.1 (11th Cir. 2007), and as designed to "control[] and overrid[e] the body's central nervous system." *Draper v. Reynolds*, 369 F.3d 1270, 1273 n.3 (11th Cir. 2004).

---

[8] At least one circuit has implied that being shot with a Taser does constitute a seizure. *Henry v. Purnell*, 501 F.3d 374, 382 (4th Cir. 2007). Another circuit declined to decide whether a suspect who was hit with one prong from a Taser, but nonetheless continued to flee and successfully escaped, was seized. *United States v. Jones*, No. 08-61004, 2009 WL 3199650, at *4 (5th Cir. Oct. 6, 2009).

It is alleged that Mr. Jernigan "passed out from the tasing" after he ran through a field. (Doc. # 73, ¶ 24.) There is no allegation that Deputy Motzenbecker accidentally discharged his Taser; indeed, the basis for the Count is that he did so intentionally. The court concludes that Deputy Motzenbecker "tasing" Mr. Jernigan, in the circumstances alleged in this case, constituted a seizure. Accordingly, Defendants are correct that an excessive force claim arising from the incident must be brought under the framework of the Fourth Amendment, rather than the Fourteenth Amendment's independent guarantee of due process. Since Count III alleges only a substantive due process Fourteenth Amendment claim, it is due to be dismissed.

## IV. CONCLUSION

Accordingly, it is ORDERED that Defendants' partial motion to dismiss (Doc. # 76) is GRANTED. Counts II, III, V, and VI are DISMISSED as they relate to Defendants Ronnie Benefield, Jason Benefield, and Paul Motzenbecker. Count I is DISMISSED to the extent, if any, it relied on a Fourteenth Amendment substantive due process theory, but not otherwise. This results in the total dismissal of Counts II, III, and VI. The counts remaining are as follows: Count I to the extent it relies on the Fourth Amendment as incorporated through the Fourteenth Amendment; Count IV; Count V only as against Defendant PCB; and Count VII. Because no claims against Defendants Jason Benefield or Paul Motzenbecker survive, the Clerk of the Court is DIRECTED to terminate them as parties to this action.

DONE this 17th day of February, 2010.

                                        /s/  W. Keith Watkins
                                  UNITED STATES DISTRICT JUDGE